IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT FLETCHER and BARTLOW GALLERY LTD. | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. |
| PETER DOIG, GORDON VENEKLASEN, MATTHEW S. DONTZIN and THE DONTZIN LAW FIRM LLP., | ) ) ) ) | |
| Defendants. | ) ) | |

**VERIFIED COMPLAINT FOR DECLARATORY AND OTHER RELIEF**

Plaintiffs Robert Fletcher ("Fletcher") and Bartlow Gallery Ltd. ("Bartlow"), by and through their attorney, Zieske Law, complains of Defendants, Peter Doig ("Doig"), Gordon VeneKlasen ("VeneKlasen"), Matthew S. Dontzin ("Dontzin") and The Dontzin Law Firm LLP ("Dontzin Firm"), and allege as follows:

1. This is a dispute brought by Fletcher, the owner of a valuable painting executed by the hand of a world-renown living artist in 1976, and that owner's art dealer, Bartlow, who has an interest in the painting, against the artist, Doig, and his agents, VeneKlasen, Dontzin and the Dontzin Firm, who have denied that Doig executed the painting and have willfully and wrongfully interfered with the plaintiffs' reasonable expectation of entering into a valid business relationship to sell the painting as a work by Doig, which would have brought future economic advantage to the plaintiffs in a sum exceeding $1 million and up to $12 million.

PARTIES

2. Plaintiff Robert Fletcher is an individual currently residing in Sault Ste. Marie, Ontario, Canada.

3. Plaintiff Bartlow Gallery Ltd. is an Illinois corporation wholly owned by Peter Bartlow in the business of dealing in works of fine art, among other things. Bartlow Gallery Ltd.'s principal and sole place of business, as well as Peter Bartlow's residence, are in the City of Chicago, Cook County, Illinois.

4. Defendant Peter Doig is a world-renown artist who, upon information and belief, resides on the island of Trinidad and is a citizen of Trinidad and Tobago.

5. Gordon VeneKlasen is an art dealer associated by Michael Werner gallery in New York. Upon information and belief, VeneKlasen resides in New York, New York. According to a recent article in the Wall Street Journal based upon interviews with Veneklasen, he owns a house in Greenwich Village, New York City; two houses in East Hampton, New York; a home in West Hollywood, California; and "hops between his houses regularly, often at short notice."

6. Matthew S. Dontzin is an attorney licensed to practice law in the State of New York, and not licensed to practice law in the State of Illinois. Dontzin practices as a partner and member of The Dontzin Law Firm LLP.

7. The Dontzin Law Firm LLP is a New York limited liability partnership registered to do business in the State of New York, with its principal and sole place of business in New York, New York.

VENUE, JURISDICTION AND APPLICABLE LAW

8. The painting at issue, executed by the hand of Doig in 1976 and signed "1976 Pete Doige", is an untitled acrylic painting on linen, with dimensions of 34 inches

2

by 41 ½ inches, and depicts a desert scene with pond (the "Work"), is stored by Bartlow, on behalf of Fletcher, in a fireproof secure location in Chicago, Illinois.

9. Fletcher has entered into a series of agreements consigning the Work to Bartlow and granting Bartlow the exclusive right to market and sell the Work, in consideration for a percentage-based commission on any sale or other proceeds obtained by the Work, providing Bartlow with an interest in the Work, its value and its disposition.

10. Leslie Hindman Auctioneers, Inc., Chicago's leading fine arts auctioneer, intended to sell the Work at auction until defendants, through the agency of Dontzin and the Dontzin Firm, contacted Leslie Hindman Auctioneers, Inc. with the willful and malicious purpose, and actual result, of interfering with plaintiff's prospective business expectancy. Following such contact, Leslie Hindman Auctioneers, Inc. informed plaintiffs that it no longer intended to sell the Work at auction on their behalf.

11. Leslie Hindman Auctioneers, Inc. is an Illinois corporation with its principal place of business of Chicago, Illinois. The auction sale of the Work by Leslie Hindman Auctioneers, Inc. would have taken place in Chicago, Illinois but for the wrongful interference perpetrated by defendants.

12. All of the events relating to the tortious interference alleged herein occurred in Chicago, Illinois, including the harm and injury caused to plaintiffs.

13. Defendants, through the agency of Dontzin and the Dontzin Firm, engaged in intentional and tortious conduct expressly aimed and purposely directed at the forum state of Illinois, with the knowledge and intent that their conduct would specifically injure plaintiffs in Illinois. Pursuant to the Illinois long-arm jurisdictional statute, 735 ILCS 5/2-209(c), the Due Process Clause of the Fourteenth Amendment of the United

States Constitution, *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482 (1984), and *Tamburo v. Dworkin*, 601 F. 3d 693 (7th Cir. 2010), defendants have availed themselves of the State of Illinois and are subject to specific personal jurisdiction in Illinois.

14. Subject matter jurisdiction of this Court is supported by 28 U.S.C. § 1332(a), in that the plaintiffs and defendants have full diversity, being that the parties are citizens of different states and foreign nations, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

RELATIONSHIPS AMONG THE DEFENDANTS

15. Dontzin and the Dontzin Firm are attorneys-in-fact and agents of VeneKlasen in all matters related to the allegations herein. On October 12, 2011, Dontzin signed and caused a letter to be delivered to Bartlow on the letterhead of the Dontzin Firm and in his capacity as an owner and partner of same. The Dontzin Letter, attached as Exhibit A hereto, begins, "We write on behalf of Gordon VeneKlasen, who forwarded us your recent e-mails demanding 'either fair value' or "an endorsement of authenticity' concerning a painting that your client, Robert Fletcher, claims to have purchased from Peter Doig in 1976."

16. VeneKlasen, Dontzin and the Dontzin Firm are agents acting on behalf of Doig in all matters related to the allegations herein. The Dontzin Letter quotes VeneKlasen's earlier email to Bartlow, dated October 3, 2011, in which VeneKlasen spoke on behalf of Doig:

> Not only does Mr. Doig not know the owner of this work [Fletcher], he has never been to the place it is supposedly painted. Additionally, he did not even begin to paint on canvas until late 1979, well after this work was made.

Exh. A hereto, at 1.

17. The October 3, 2011 email from VeneKlasen to Bartlow was in response to inquiries by Bartlow, beginning with an email sent only to Doig personally on September 23, 2011, in which Bartlow inquired:

> If you are Peter Doig please get in touch with Bob Fletcher from Thunder Bay. He has a painting of yours and might want to sell it but needs guidance on how to proceed. . . . Your privacy is of utmost concern, and we could use a little help.

18. Upon information and belief, Doig and VeneKlasen are principals acting through their agents Dontzin and the Dontzin Firm, in all matters related to the allegations herein, including the acts of interference.

## CHRONOLOGICAL FACTS

19. In the mid to late 1970s, Fletcher was employed at Thunder Bay Correctional Center, Ministry of Correctional Services, Ontario Government Civil Service, in Thunder Bay, Ontario, Canada.

20. In 1975, while so employed, Fletcher enrolled in college classes at Lakehead University in Thunder Bay.

21. In 1975 or 1976, Fletcher met Doig, who was approximately 17 at the time and used the name "Pete Doige", when Doig also enrolled at Lakehead University. Doig told Fletcher that he was born in Scotland.

22. Shortly after enrolling, Doig stopped appearing at Lakehead University, and shortly thereafter was remanded to the Thunder Bay Correctional Center as an inmate. At the time he was admitted by the bailiffs from Thunder Bay Jail, Fletcher was in the admitting room in his capacity as a correctional officer, and Fletcher and Doig recognized each other at the time.

23.     Doig was housed in the Thunder Bay Correctional Center for about five months for possession of LSD, and was involved during that time in the fine arts educational program offered at the center; and also with the recreational arts program at the center.

24.     During Doig's stay at the Thunder Bay Correctional Center, Fletcher observed the Work at issue in this lawsuit at several stages of completion by Doig during Fletcher's rounds at the correctional center.

25.     With Fletcher's assistance, Doig applied for and was granted parole, and Fletcher, as a volunteer probation and parole officer for the Thunder Bay Probation and Parole Office, was assigned as Doig's parole officer.

26.     During Doig's parole period, Fletcher saw him approximately two to three times per month, although Doig contacted Fletcher more frequently by telephone. During their conversations, Doig asserted that he had no income, no more student loans, and no parental funds available to him.

27.     Fletcher helped Doig in his search for employment, and helped him to obtain employment through the Seafarers Union in Thunder Bay.

28.     Fletcher also encouraged Doig to pursue his artistic talent, and accepted Doig's offer to sell the Work to Fletcher for $100.

29.     Since that day in or about 1976 and to the present, Fletcher has owned the Work.

30.     After Doig left Thunder Bay, Doig returned to Thunder Bay with two photographers from Toronto, who photographed the Work on behalf of Doig.

31. Many years later, a friend staying with Fletcher commented on the Work hanging in Fletcher's home, mentioned that it might be by Peter Doig, and began doing research on the artist and the painting, which was later continued by Bartlow on Fletcher's behalf.

32. Research into Fletcher's knowledge of Doig and Doig's publicly-known life story revealed several uncanny convergences, including the following:

    a. Doig and his agents have publicly stated that Doig was born in the late 1950s in Scotland, putting him in his late teens in 1976.

    b. After living in Trinidad with his parents, he emigrated to Canada with them when he was young child.

    c. Doig has admitted publicly that he used LSD up to the age of nineteen, and three of his famous paintings, *Windowpane*, *Blotter* and *Orange Sunshine*, bear titles that are street names for varieties of LSD.

    d. Doig and his agents have publicly stated that in his late teens, Doig was a roustabout in western Canada, and no further information or evidence about his whereabouts or activities during 1976-1978 is available, until his appearance at art school in England in 1979.

    e. The Work has uncanny commonalities in composition and execution with known works by Doig.

    f. Despite extensive research, no evidence has been found of any other person with a first name of Pete or Peter and a family name of Doig or Doige in Canada in the late 1970s.

33. After compiling extensive research about Doig and the Work, Bartlow learned that Doig and StudioFilmClub, which was co-founded by Doig, were associated with the Trinidad and Tobago Film Festival. Finding a contact email address *peter@ttfilmfestival.com*, Bartlow, on behalf of Fletcher, emailed to that address on September 23, 2011 an inquiry in which he referred to Fletcher and Thunder Bay by name, as well as to a painting by Doig that Fletcher owned.

34. Bartlow also contacted VeneKlasen – who was listed as Doig's dealer – by telephone, who was already familiar with Fletcher's claim, apparently through Bartlow's email to Doig.

35. After emailing VeneKlasen with further details about Fletcher's acquaintance with Doig in the late 1970s, and the resemblance of the Work to paintings known to be by Doig, Bartlow received an email on October 3, 2011 from VeneKlasen, writing on behalf of Doig, vehemently stating "this work is absolutely not by Peter Doig," denying that Doig had known Fletcher or had ever been to Thunder Bay.

36. Also by email on October 3, 2011, VeneKlasen wrote on behalf of Doig to Bartlow: "Whatever this person [Fletcher] alleges is untrue. The painting is NOT by Peter Doig. Anyone can see that. We are not interested in any further communication related to this. Good luck in finding the real artist for this. Any attempt to attribute this painting to Peter Doig in any way will be dealt with by our attorneys."

37. Bartlow, on behalf of Fletcher, informed VeneKlasen in writing that Doig should simply provide information and evidence of his whereabouts from 1976 to 1978 that disproves his authorship of the Work; and that this would be sufficient for Fletcher and Bartlow to end their inquiries.

8

38. On October 12, 2011, Dontzin and the Dontzin Firm, on behalf of Doig and VeneKlasen, sent the Dontzin Letter (Exhibit A hereto) to Barlow. In it, Dontzin violated ethical standards and rules applicable to him as an attorney licensed in New York by expressly threatening Bartlow with criminal prosecution, in order to gain advantage in this civil dispute. The Dontzin Letter alleges incorrectly that Bartlow "threatened to extort Mr. VeneKlasen and Mr. Doig"; that Bartlow's actions are "potentially criminal"; and that unless Bartlow complies with the request to cease and desist from communicating with Dontzin's clients, including Doig, he will "seek[] the protection of the prosecutor's office. . . ."

39. On or about May 17, 2012, plaintiffs obtained the interest of Leslie Hindman Auctioneers, Inc., which stated to plaintiffs its intentions to sell the Work by auction on plaintiffs' behalf.

40. Leslie Hindman Auctioneers, Inc. were then contacted by defendants, upon information and belief by a letter from the Dontzin Firm, wrongfully denying that the Work was executed by Doig's hand and threatening legal action if the Work was sold as having been painted by Doig's hand.

41. As a direct and proximate result, Leslie Hindman Auctioneers, Inc. refrained from taking the Work for auction, and communicated to plaintiffs its decision not to auction the Work.

42. An interest expressed by Sotheby's in auctioning the Work on behalf of plaintiffs was also withdrawn, upon information and belief, as a direct and proximate result of defendants' wrongful denial of Doig's authorship of the Work.

43. On November 20, 2012, a blog on Huffington Post by Janice Harper titled "A Painting Without an Artist" was published regarding the dispute over attribution of the Work to Doig.

44. In the public comments following that article, which are still available on the Internet, a commenter posted a comment using the name *ParinazM* (with coincides with the name Parinaz Magadassi, whose interview with Peter Doig appears on the website of Michael Werner gallery, with which VeneKlasen was associated), stating, "Hello Peter Bartlow . . . There are attendance records, places [Doig] worked, people he worked for, etc. Unluckily for you, a whole year of [Doig's] life did not magically disappear. Your con is pathetic . . . ."

45. Janice Harper, the author of the blog to which this comment was posted, replied to this comment asking that the artist and his agents answer her emails, and provide such evidence of Doig's whereabouts and employment in 1976, to which the commenter did not further reply.

46. Another commenter on the blog post, using the name *peterdoig* and asserting that he is Doig, and upon information and belief being Doig, then wrote a comment on December 24, 2012, denying having authored the Work, denied ever having been to Thunder Bay or in a correctional facility. He stated that "I lived in Toronto at this time and was not even an 'artist'." The comment by Doig confirms that he has been in contact with Michael Werner gallery and VeneKlassen, and that VeneKlassen and his attorneys, Dontzin and the Dontzin Firm, had been acting in concert with and as agents of Doig.

47. Moreover, Doig's assertions that he "lived in Toronto" and was "not even an 'artist'" at the time the Work was painted is inconsistent with his assertions, in the interview by Parinaz Magadassi published on Michael Werner gallery's website and dated April 2011, that during these years, after high school, Doig "went out to the prairies in Canada to work on the rigs. It was out there that I started to draw a bit . . . ." http://www.michaelwerner.com/news_129.htm.

48. Although plaintiffs have obtained numerous angry, curt and strongly-worded responses to their many requests for details of Doig's life in 1976-1978, these blog comments by "peterdoig" – and the blog comment by "parinazm" asserting that there are records of his life those years that would disprove his authorship of the Work – are the only comments provided by Doig and his agents that conflict with Fletcher's knowledge regarding that period of Doig's life. No actual facts or evidence has ever been provided to disprove that Doig was in Thunder Bay in 1976 and authored the Work, despite assertions that such evidence exists.

THE VALUE AT STAKE FOR THE PARTIES

49. The reasons for plaintiffs' inquiries, and refusal to accept a bare denial of the work by Doig and his agents, without more, are self-evident from the following facts.

50. In 2007, Doig's painting *White Canoe* sold at Sotheby's for $11.3 million, which was at that time an auction record for a living European artist. More recently, in February 2013, another painting by Doig, *The Architect's House in the Ravine*, sold for $12 million at auction in London.

51. The Work's unique story and background, the early execution of the painting, and its high merits as a work of art by a teenager later to become a world-

11

renown artist, could result in an auction sale of the Work well in excess of $10 million. If the Work is disproved as having been painted by Doig, it is essentially worthless.

52. Doig has strong motives to deny having painted the Work due to the background and place in which it was painted.

53. Further, Doig has lied about his past before, and particularly about his past during his late teen years. Doig's biographer, Adrian Searle, wrote that he "faked an impressive array of high school qualifications that he did not in fact possess" when applying to art school in London in 1979. Doig has suggested in interviews that he never finished high school, and in fact dropped out and left for western Canada.

## COUNT I
### INTERFERENCE WITH PROSPECTIVE ECONOMNIC ADVANTAGE

54. Plaintiffs expressly incorporate by reference all of the allegations made in paragraphs 1 through 53 of this Complaint as paragraph 54 of Count I of the Complaint.

55. Defendants, by the action of Dontzin, acting as agent for Dontzin Firm, Doig and VeneKlasen, interfered with Plaintiff's prospective economic advantage by writing to Leslie Hindman Auctioneers, Inc. in or about May, 2012.

56. Such act was willfully and wantonly performed by defendants, with knowledge of the falsity of the assertions in the letter to Leslie Hindman Auctioneers, Inc. denying Doig's execution of the Work, and with the intention to stop Leslie Hindman Auctioneers, Inc. from auctioning the Work on behalf of plaintiffs.

57. At the time of defendants' acts of interference, plaintiffs had a reasonable expectation of entering into a valid and enforceable business relationship and contract with Leslie Hindman Auctioneers, Inc. to auction the Work.

58. At the time of defendant's actions, defendants knew of plaintiffs' intention to auction the Work through Leslie Hindman Auctioneers, Inc., knew that the latter was intending to auction the Work on their behalf, and knew that such an auction sale of the Work would bring significant economic advantage to plaintiffs.

59. Defendants' actions prevented plaintiffs' legitimate expentency of an agreement with Leslie Hindman Auctioneers, Inc. from ripening into a valid and enforceable business relationship to auction the Work.

60. Had defendants refrained from such interference, the Work would have been auctioned by Leslie Hindman Auctioneers, Inc. as a Doig painting, and obtained a price at auction in excess of $1 million, and possibly in excess of $10 million.

61. Such an auction result would have resulted in prospective economic advantage to the plaintiffs in excess of $1 million, and possibly in excess of $10 million.

62. As a direct and proximate result of defendants' acts of wrongful interference, Plaintiffs have been damaged in an amount to be determined through discovery and at the time of trial, but in an amount to exceed $1 million.

WHEREFORE, plaintiffs respectfully pray that judgment be entered jointly in their favor and jointly and severally against defendants, Peter Doig, Gordon VeneKlasen, Matthew S. Dontzin and The Dontzin Law Firm LLP, as follows:

    A.    For an award of plaintiff's actual damages and punitive damages in an amount appropriate to punish defendants for their willful, wanton, and knowing conduct;

    B.    For plaintiffs' costs of suit; and

    C.    For such other or further relief as this Court deems just and equitable.

COUNT II
DECLARATORY RELIEF

63. Plaintiffs expressly incorporate by reference all of the allegations made in paragraphs 1 through 62 of this Complaint as paragraph 63 of Count I of the Complaint.

64. Plaintiffs seek to sell the Work as a painting executed by the hand of Peter Doig. Defendants have demonstrated a pattern of actions to prevent such a sale, and have threatened legal action against plaintiffs if they "attempt to attribute [the Work] to Peter Doig in any way".

65. There is a substantial and continuing controversy between the parties, and a declaration of rights is necessary and appropriate to establish plaintiffs' right to attribute the Work to Doig in a private or auction sale of the Work.

66. The attribution of the Work to Doig is a right of plaintiffs potentially worth in excess of $10 million.

67. The rights of the parties with respect to the attribution of the Work to Doig can be redressed by the requested relief. Although under the Visual Artists Rights Act of 1990, 17 U.S.C. § 106A ("VARA"), an artist has a right to authoritatively disclaim attribution of a Work to him (17 USC § 106A(a)(1)(B)), this right does not apply to the Work, as it was created before VARA's effective date and was transferred from the author, Doig, prior to that date. 17 USC § 106A(d)(1), (2).

68. Determination and declaration of the rights of the parties will prevent litigation against plaintiffs for selling the Work with an attribution to Doig, which it is their intention to do.

WHEREFORE, plaintiffs respectfully pray that declaratory judgment be entered jointly in their favor and against defendants, Peter Doig, Gordon VeneKlasen, Matthew S. Dontzin and The Dontzin Law Firm LLP, as follows:

A. Declaring the right of plaintiffs, and any agents of either of the plaintiffs, to attribute the Work to Peter Doig, including such attribution in relation to a private or auction sale of the Work, without interference by defendants and/or any of their agents; and

B. For such other or further relief as this Court deems just and equitable.

DATED: April 30, 2013

                                                ROBERT FLETCHER and BARTLOW GALLERY LTD.

                                                By: /s/ William F. Zieske
                                                          One of Their Attorneys

William F. Zieske
ARDC 6244180
ZIESKE LAW
P.O. Box 31457
Chicago, IL 60631
Telephone: (312) 252-9599
Facsimile: (312) 278-0599