**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERT FLETCHER and BARTLOW GALLERY LTD. | ) ) ) | Case No. 1:13-cv-03270 |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| PETER DOIG, GORDON VENEKLASEN, MATTHEW S. DONTZIN and THE DONTZIN LAW FIRM LLP, | ) ) ) ) | |
| Defendants. | ) | Hon. Gary S. Feinerman, U.S.D.J. |

**DEFENDANT PETER DOIG'S**
**MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS**
**FOR LACK OF PERSONAL JURISDICTION OR FOR *FORUM NON CONVENIENS***

AGRAWAL EVANS LLP
308 W. Erie Street · Suite 502
Chicago, Illinois 60654–3924
(312) 448-8800

*Attorneys for Peter Doig, Gordon VeneKlasen,*
*Matthew S. Dontzin, and The Dontzin Law Firm LLP*

{1008.1 / 00011003}

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. II

I.    INTRODUCTION ................................................................................................. 1

II.   ADDITIONAL FACTS ......................................................................................... 4

      A.   DOIG IS A SELF-EMPLOYED ARTIST, WHO RESIDES IN TRINIDAD. ................................... 4

      B.   DOIG LEARNED ABOUT THE DISPUTED PAINTING WHEN BARTLOW CONTACTED THE
           TRINIDAD AND TOBAGO FILM FESTIVAL AND VENEKLASEN. ........................................... 4

      C.   WHEN DOIG LEARNED ABOUT THE SUBSEQUENT MAY 2012 INQUIRY REGARDING
           THE DISPUTED WORK, HE INSTRUCTED HIS AGENTS TO TAKE APPROPRIATE
           ACTION. ........................................................................................................................... 5

      D.   DOIG PROVIDES INFORMATION REFUTING PLAINTIFFS' CONTENTIONS. ........................... 5

      E.   THE DONTZIN DEFENDANTS' INVESTIGATION LEADS TO FORMER THUNDER BAY
           CORRECTIONAL CENTER INMATE, PETER EDWARD DOIGE—ALSO A PAINTER. ............. 6

      F.   PLAINTIFFS CONTEND THAT THEY NEED "AUTHENTIC" RECORDS "DIRECTLY
           FROM" THE INSTITUTIONS IN CANADA. ........................................................................... 7

III.  ARGUMENT ........................................................................................................ 8

      A.   DOIG IS NOT SUBJECT TO PERSONAL JURISDICTION IN ILLINOIS ................................... 8

           1.   *Doig Had Zero Contacts with Anyone in Illinois Concerning the Disputed
                Painting.* ........................................................................................................... 9

           2.   *VeneKlasen's and the Dontzin Defendants' Contacts Are Insufficient to
                Establish Personal Jurisdiction over Doig.* ...................................................... 9

           3.   *Subjecting Doig to Jurisdiction in Illinois Would Also Offend Principles of
                Fair Play and Substantial Justice.* ................................................................... 10

      B.   THIS CASE SHOULD BE DISMISSED FOR *FORUM NON CONVENIENS.* .............................. 13

           1.   *No Deference Should Be Accorded to Plaintiffs' Choice of Forum, because
                Fletcher, the Real Party-in-Interest, Is Canadian.* .......................................... 14

           2.   *The Ontario Courts Offer an Available, Adequate Forum.* ............................. 15

           3.   *The Private and Public Interest Factors Strongly Weigh in Favor of
                Dismissal.* ....................................................................................................... 16

IV.   CONCLUSION .................................................................................................. 23

## TABLE OF AUTHORITIES

**Cases**

*Abad v. Bayer Corp.*,
  563 F.3d 663 (7th Cir. 2009) ............................................................. 14, 15

*Armour Pharm. Co. v. Home Ins. Co.*,
  60 F.R.D. 592 (N.D. Ill. 1973) ................................................................ 15

*Asahi Metal Indus. Co. v. Superior Court of Cal.*,
  480 U.S. 102 (1982) ...................................................................... 11, 13

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ........................................................................... 11

*Campbell v. Bridgeview Marina, Ltd.*,
  347 F. Supp. 2d 458 (E.D. Mich. 2004) ................................................... 17

*Chang v. Baxter Healthcare Corp.*,
  599 F.3d 728 (7th Cir. 2010) ................................................................ 14

*Chelios v. Nat'l Hockey League Players' Ass'n*,
  No. 06 C 5333, 2007 WL 178326 (N.D. Ill. Jan. 18, 2007) ................... 14, 17

*Estate of Davis v. Erickson Beamon, Ltd.*,
  No. 1:12-CV-01687-JMS, 2013 WL 6328726 (S.D. Ind. Dec. 4, 2013) ........ 15

*Gulf Oil v. Gilbert*,
  330 U.S. 501, 506–507 (1947) .............................................................. 16

*Gund v. Philbrook's Boatyard*,
  374 F. Supp. 2d 909 (W.D. Wash. 2005) ................................................. 20

*Harris v. France Telecom, S.A.*,
  No. 11 CV 357, 2011 WL 3705078 (N.D. Ill. Aug. 22, 2011) ............... 15, 16

*Illinois v. Hemi Grp. LLC*,
  622 F.3d 754 (7th Cir. 2010) ................................................................ 11

*In re Adair*,
  965 F.2d 777 (9th Cir. 1992) ................................................................ 20

*In re Air Crash Near Athens, Greece on August 14, 2005*,
  479 F. Supp. 2d 792 (N.D. Ill. 2007) ..................................................... 15

*In re Royal Grp. Technologies Sec. Litig.*,
  No. 04 Civ. 9809, 2005 WL 3105341 (S.D.N.Y. Nov. 21, 2005) ........... 17, 20

*Kitaru Innovations Inc. v. Chandaria*,
  698 F. Supp. 2d 386 (S.D.N.Y. 2010) ..................................................... 17

*KM Enterps., Inc. v. Global Traffic Techs., Inc.*,
  725 F.3d 718 (7th Cir. 2013) ............................................................................ 9

*Michell v. Gen. Motors Corp.*,
  439 F. Supp. 24 (N.D. Ohio 1977) ..................................................................... 20

*Moss v. Nui Phao Mining Joint Venture Co., Ltd.*,
  No. 10-1634 SC, 2010 WL 3222377 (N.D. Cal. Aug. 13, 2010) ........................... 17

*Owner-Operators Indep. Drivers Ass'n, Inc. v. Mayflower Transit, Inc.*,
  1:98-CV-0457-SEB-VSS, 2006 WL 1794751 (S.D. Ind. June 27, 2006) ............... 15

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981) ..................................................................................... 14, 16

*Pyrene, Ltd. v. Wocom Commodities, Ltd.*,
  984 F. Supp. 1148 (N.D. Ill. 1997) ..................................................................... 14

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
  549 U.S. 422 (2007) ........................................................................................ 13

*Sonoco Products Co. v. ACE INA Ins.*,
  877 F. Supp. 2d 398 (D.S.C. 2012) ..................................................................... 17

*Soper v. Jurid Werke GMBH*,
  1990 WL 119414 (N.D. Ill. Aug. 10, 1990) ......................................................... 11

*Stroitelstvo Bulgaria Ltd. v. Bulgarian-Am. Enter. Fund*,
  589 F.3d 417 (7th Cir. 2009) ........................................................... 13, 16, 17, 19, 21

*Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.*,
  796 F.2d 821 (5th Cir. 1986) .............................................................................. 22

*U.S.O. Corp. v. Mizuho Holding Co.*,
  547 F.3d 749 (7th Cir. 2008) .............................................................................. 15

*VictoriaTea.com, Inc. v. Cott Beverages, Canada*,
  239 F. Supp. 2d 377 (S.D.N.Y. 2003) .................................................................. 17

*Wiles v. Morita Iron Works Co., Ltd.*,
  125 Ill. 2d 144 (1988) ....................................................................................... 11

*World–Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980) ......................................................................................... 11

**Rules**
FED. R. CIV. P. 43(a) ............................................................................................ 20

**Other Authorities**
Restatement (Second) of Agency § 372(2) ............................................................ 14

Defendant Peter Marryat Doig, by and through his undersigned counsel, respectfully submits this memorandum of law in support of his motion to dismiss Plaintiffs' Complaint.[1]

## I.     INTRODUCTION

In this case, Robert Fletcher, a Canadian plaintiff and the Bartlow Gallery, Fletcher's Chicago-based art dealer, seek to hale Peter M. Doig ("Doig"), a self-employed artist who is a citizen of Trinidad and Tobago and has resided in Trinidad since 2002, into this court in Illinois. Plaintiffs also sued Gordon VeneKlasen, Doig's New York art dealer, and the Dontzin Defendants (their New York lawyers). The gravamen of Plaintiffs' claim is that, in response to the Bartlow Gallery's inquiries and those of an auction house that Plaintiffs engaged, Doig (through his agents) wrongly denied authorship of a painting that Doig did not create.

The Complaint's own allegations, as confirmed by the jurisdictional record, establish that this case must be dismissed for lack of personal jurisdiction. Plaintiffs have not met their burden even to make a *prima facie* showing to establish personal jurisdiction over Doig or the other defendants. This case presents a textbook absence of sufficient minimum contacts and a complete lack of purposeful availment by Doig (or any other defendant). The record shows:

- Doig personally made **no contact** with anyone in Illinois in connection with the Disputed Work. *See* Part II.B, *infra*.

- All of VeneKlasen's contacts with Illinois were **in response to** Bartlow's own telephonic and e-mail inquiries or inquiries initiated by Leslie Hindman after Bartlow tried to auction the Disputed Work through Hindman's auction house. *See* VeneKlasen's Br. at pp. 6–9.

- The Dontzin Defendants' only contacts with Illinois were their issuance of **cease-and-desist letters** precipitated by **Plaintiffs' own contacts** and Bartlow's threat of litigation. *See* Dontzin Br. at 11–14.

---

[1] This brief uses the same defined terms that are employed in The Dontzin Defendants' Memorandum of Law In Support of their Motion to Dismiss, Dkt. #22 (the "Dontzin Defendants' Brief" or the "Dontzin Br.") and Defendant Gordon VeneKlasen's Memorandum of Law in Support of His Motion to Dismiss, Dkt. #26-1 ("VeneKlasen's Brief" or "VeneKlasen Br."). Unless otherwise noted, citations in this Memorandum to "¶ ___" refer to the numbered paragraphs of the Complaint, and all bold and italicized emphasis has been added.

Thus, even if VeneKlasen's and the Dontzin Defendants' contacts with Illinois could be imputed to Doig, none is legally sufficient to support the exercise of personal jurisdiction over Doig in Illinois. To avoid replication and to promote economy, Doig joins VeneKlasen's and the Dontzin Defendants' motions and incorporates their Briefs as if fully stated herein.[2] Additionally, haling Doig from Trinidad into this forum to answer for a painting that he allegedly painted almost 40 years ago in an Ontario prison would flout the Due Process Clause's principles of fair play and substantial justice.

Although this case should be dismissed in its entirety for lack of personal jurisdiction over any defendant, Doig alternatively seeks dismissal for *forum non conveniens*. Plaintiffs have been provided with dispositive evidence refuting their contention that Doig was incarcerated, that he attended Lakehead University, or that he painted the Disputed Work. Worse, contrary to Plaintiffs' under-oath assertion that "no evidence has been found of any other person with a first name of Pete or Peter and a family name of Doig or Doige in Canada in the late 1970s," ¶ 32(f), the Defendants have uncovered substantial (as of yet undisputed) evidence that a deceased Canadian named "Peter Edward Doige" actually painted the Disputed Work. Doige's sister, Marilyn Bovard, has provided an under-oath declaration stating that Doige was incarcerated at Thunder Bay Correctional Center in the 1970s, attended Lakehead University, and was a painter during his lifetime. But Plaintiffs insist on prolonging this fool's errand of a lawsuit professing "the need to obtain authentic records through discovery, directly from the appropriate institutions," which are in Ontario, Canada. Doig Appx. 19.

Thus, if this Court does not dismiss this case for lack of personal jurisdiction, it should dismiss the case against Doig for *forum non conveniens* in favor of the courts of Ontario,

---

[2] Logically, Doig does not advance the arguments that VeneKlasen and the Dontzin Defendants assert specifically based on their status as Doig's agents.

Canada—the home province of the Disputed Painting's owner and this lawsuit's real party-in-interest, Robert Fletcher.  If this case is dismissed for *forum non coveniens*, Doig is prepared to submit to the Ontario court's jurisdiction, which would provide a fair hearing for the remedies Plaintiffs seek in this action.[3]  Plaintiffs themselves say that most of the discovery they need "to determine whether Plaintiffs should proceed with their case" is "third-party discovery to foreign institutions (e.g., in Canada)."  Doig Appx. 21.  Moreover, Ontario—not Illinois—maintains the paramount interest in this dispute.  It is Fletcher's home and the location of all of the events giving rise to the principal legal and factual issues that Plaintiffs maintain arise in this case: (1) "[w]hether the painting at issue may be legally attributed to Peter Doig in a future private or auction sale, in exhibition or otherwise;" and (2) "[w]hether the painting at issue was painted by the hand of Peter Doig."  Doig Appx. 17.  Illinois' connection to this dispute, in contrast, is mere happenstance because Fletcher coincidentally engaged an art dealer here.  So, the applicable private and public interest factors of the *forum non conveniens* analysis all soundly support dismissal of this action in favor of the Ontario courts.

In sum, this Court should dismiss this action for lack of personal jurisdiction over Doig (and the other defendants).  In the alternative, the Court should dismiss this action against Doig for *forum non conveniens*.

---

[3] The case against VeneKlasen and the Dontzin Defendants should be dismissed.  Given that the lack of any inconsistency between Doig's position and those of VeneKlasen and the Dontzin Defendants, Plaintiffs will (hopefully) adhere to their recent assertion that "Mr. Doig's responsive pleading may also be of a character that would permit Plaintiffs to not challenge the pending motions to dismiss, and simplify this case greatly." Plaintiffs' Motion for Additional Time to File Responses to Defendants' Motions to Dismiss, Dkt. #30, Dec. 9, 2013, ¶ 12 at p. 3.  If Plaintiffs do not do so, though, VeneKlasen and the Dontzin Defendants' should be dismissed for the reasons stated in their motion to dismiss briefs.

## II.    ADDITIONAL FACTS

Doig incorporates by reference the facts in Part II of VeneKlasen's Brief and in Part II of the Dontzin Defendants' Brief.   *See* VeneKlasen Br. at pp. 3–6; Dontzin Br. at pp. 3–7. Additionally, Doig states as follows.[4]

### A.    DOIG IS A SELF-EMPLOYED ARTIST, WHO RESIDES IN TRINIDAD.

Peter Marryat Doig is a self-employed artist.  Doig Decl. ¶ 2.  He is a citizen of Trinidad and Tobago and has resided in Trinidad since 2002.  *Id.*.  Doig was born in April 1959 and resided in Canada from approximately 1966 until 1979, when he moved to the United Kingdom. *Id.*, ¶ 3.  Doig attests that he has never been incarcerated in the Thunder Bay Correctional Center, did not meet Fletcher in the 1970s, has never been enrolled in or attended any classes at Lakehead University, and has never used the name "Pete Doige" or "Peter Doige."  *Id*., ¶ 6.

### B.    DOIG LEARNED ABOUT THE DISPUTED PAINTING WHEN BARTLOW CONTACTED THE TRINIDAD AND TOBAGO FILM FESTIVAL AND VENEKLASEN.

Doig first learned about the Disputed Work in September 2011 when the Trinidad and Tobago Film Festival forwarded an e-mail from Bartlow to him.  *Id.*, ¶ 9.  Doig did not respond to that e-mail, but he later heard from his art dealer, VeneKlasen, that Bartlow had contacted VeneKlasen about the Disputed Painting, too.  *Id.*, ¶ 10.  Doig also heard that Bartlow contacted Parinaz Mogadassi, *id.*, who previously had co-represented Doig, *see* VeneKlasen Decl. ¶ 14.

Doig conferred with VeneKlasen:

I reviewed the e-mail correspondence from Mr. Bartlow and conferred with Mr. VeneKlasen. I informed Mr. VeneKlasen that I did not paint the Disputed Work. I also told him that I did not know Mr. Fletcher and that I had not been to Thunder

---

[4] In addition to the record submitted with VeneKlasen's Brief and the Dontzin Defendants' Brief, Doig submits the Declaration of Peter M. Doig ("Doig Decl."), the Declaration of Suyash Agrawal ("Agrawal Decl."), and the Affidavit of Gordon D. Capern (the "Capern Aff.").  References to the "Doig Appx." are to the sequentially-numbered documents submitted with the Declaration of Suyash Agrawal.  The highlighting in the appendix documents has been added for convenience.

> Bay prison-all true. Mr. VeneKlasen and I also discussed that, in 1976, I was only 16 years old and was enrolled at the Jarvis Collegiate Institute and S.E.E.D., a public alternative secondary school, both in Toronto.

Doig Decl. ¶ 11. As a result, Doig expected and entrusted VeneKlasen to take "appropriate steps to make sure that [the Disputed Painting] was not attributed to" Doig. *Id.*, ¶ 12. Following Bartlow's threat of legal action,[5] VeneKlasen and Doig "agreed that Mr. Dontzin, [their] attorney, should take appropriate legal action." Accordingly, Doig reviewed the Dontzin-Bartlow letter before it was sent. *Id.*, ¶ 14.

### C. WHEN DOIG LEARNED ABOUT THE SUBSEQUENT MAY 2012 INQUIRY REGARDING THE DISPUTED WORK, HE INSTRUCTED HIS AGENTS TO TAKE APPROPRIATE ACTION.

Doig heard nothing further about the Disputed Painting until about May 2012. *Id.*, ¶ 15. "At that time, Mr. VeneKlasen and Ms. Birbil [a director of the Michael Werner Gallery] told [Doig] that they had been contacted regarding the Disputed Work." *Id.*[6] Because Doig did not paint the Disputed Work, he instructed VeneKlasen and Birbil to have Dontzin take appropriate action, *id.*, and he reviewed the Dontzin-Hindman Letter, dated May 16, 2012. *Id.*, ¶ 16. "Following that communication with Ms. Hindman, [Doig] again heard nothing further about the Disputed Work until after this lawsuit was filed." *Id.*, ¶ 17.

### D. DOIG PROVIDES INFORMATION REFUTING PLAINTIFFS' CONTENTIONS.

After this lawsuit began, Doig "provided various records and information in an honest effort to end Mr. Fletcher's and Mr. Bartlow's misplaced attempts to attribute the Disputed Painting to [him]." *Id.*, ¶ 25.

> This has included, for example, my student transcript from Ontario, letter correspondence from my parents during that period, and a copy of my British

---

[5] *See* VeneKlasen Decl. ¶ 19; Dontzin Appx. 16.

[6] *See* Birbil Decl. ¶ 3 ("In mid-May 2012, I received a phone call from a person who identified herself as Leslie Hindman of Leslie Hindman Auctioneers in Chicago. Ms. Hindman told me that an art dealer in Chicago had offered the Disputed Work to her and she was doing her research on it before considering it.").

> passport (which shows that it was renewed in December 1976). Additionally, I
> consented to the release of records from Lakehead University, which confirmed
> that I was never registered as a student there.

*Id.*; *see also* Agrawal Decl. ¶ 4; Doig Appx. 19–20 (listing records).[7]  The Dontzin Defendants,

who first appeared in this action, provided those records to Plaintiffs in conjunction with a Rule

11 pre-filing motion.  Agrawal Decl. ¶ 4.  Plaintiffs, however, insisted on proceeding with this

lawsuit, asserting that the records they were given were not sufficiently conclusive.

### E. THE DONTZIN DEFENDANTS' INVESTIGATION LEADS TO FORMER THUNDER BAY CORRECTIONAL CENTER INMATE, PETER EDWARD DOIGE—ALSO A PAINTER.

The Dontzin Defendants (on behalf of themselves, as well as Doig and VeneKlasen)

continued their investigation into who actually painted the Disputed Work.  They located

Marilyn Doige Bovard, the sister of a deceased Canadian man named Peter Edward Doige.  Doig

Appx. 4 (Bovard Decl. ¶¶ 2, 6).  The Dontzin Defendants' attorney, Suyash Agrawal, personally

traveled to Hinton, Alberta, Canada, and met with Bovard.  Agrawal Decl. ¶ 5.  She provided an

under-oath declaration stating that her brother, Doige, had attended Lakehead University in the

1970s and served a jail sentence at the Thunder Bay Correctional Center.  Doig Appx. 4  (Bovard

Decl. ¶ 3).  Bovard also stated that Doige was, before his death, a painter and that she believes

Doige painted the Disputed Work based on the scenery and her brother's personal history.  Doig

Appx. 5–6 (Bovard Decl. ¶¶ 9–12).  Bovard also provided various records that she received as

Doige's next-of-kin, including—significantly—an image of Doige's 1976 student identification

card from Lakehead University.  Agrawal Decl. ¶ 6; Doig Appx. 8–11.  Agrawal transmitted

these records to Plaintiffs' counsel upon his return from Alberta.  Agrawal Decl. ¶ 10.

---

[7] Though Plaintiffs quibble with how these documents have been characterized, they acknowledge receiving them. The personal records have not been attached to this brief.  If the Court wants to examine them, they can be submitted to the Court under seal following the entry of an appropriate protective order.

Agrawal also provided a certification from the Royal Canadian Mounted Police confirming—based on Doig's fingerprints—the absence of any criminal record for Doig in Canada. Doig Appx. 12; Doig Decl. ¶ 25.[8] Also, based on Doig's consent for the release of records from Lakehead University, Doig Decl. ¶ 25, the Associate Registrar of Lakehead University confirmed that it has no record of Doig ever having been registered as a student there, Doig Appx. 14. This, too, was provided to Plaintiffs. Agrawal Decl. ¶ 11.

### F. PLAINTIFFS CONTEND THAT THEY NEED "AUTHENTIC" RECORDS "DIRECTLY FROM" THE INSTITUTIONS IN CANADA.

On August 28, 2013, the parties submitted a joint Status Report to the Court. Doig Appx. 15–23. In that Status Report, Plaintiffs asserted that "inaccuracies and mischaracterizations" of documents produced to them and in Bovard's Declaration "support[ed] the need to obtain authentic records through discovery, *directly from the appropriate institutions* rather than through a person in Alberta, Canada who is not fully and directly subject to this Court's authority." Doig Appx. 19. Plaintiffs proclaimed to need "limited discovery" to "determine whether Plaintiffs should proceed with their case." *Id.* at 21. "Because most of this discovery is third-party discovery to foreign institutions (e.g., in Canada)," Plaintiffs stated, "it will require additional steps that could increase the length of time to obtain discovery responses." *Id.*

Following a September 3, 2013, status conference before this Court, *see* Minute Entry, Dkt. #17, the parties exchanged Rule 26(a)(1) disclosures on September 17, 2013. Agrawal Decl. ¶ 14; Doig Appx. 24–30. In their Rule 26(a)(1) witness list, Plaintiffs identified: (a) Fletcher in Ontario, (b) Bartlow in Chicago, (c) Bovard in Alberta, (d) Doig in Trinidad, (e)

---

[8] Plaintiffs had initially been provided with an RCMP criminal check based on Doig's name and date-of-birth. Doig Appx. 13. That report confirmed the absence of any criminal record, but noted "[p]ositive identification that a criminal record does or does not exist at the RCMP National Repository of Criminal Records can only be confirmed by fingerprint comparison." *Id.* Accordingly, Doig provided his fingerprints, based on which the RCMP provided its August 12, 2013 certification. Doig Appx. 12.

VeneKlasen in New York, and (f) Dontzin in New York. Doig Appx. 24–25. [9] They also listed (g) Gwendolyn Woolwine, the mother of Peter Edward Doige, an Idaho resident, and (h) a woman named Cheryl Polini, whose address and telephone number were "unknown."[10] Doig Appx. 25. The Dontzin Defendants listed Bovard, Doig, VeneKlasen, and Dontzin. Doig Appx. 28–29.

On October 2, 2013, VeneKlasen was served in New York, New York. VeneKlasen filed his motion to dismiss on November 7, 2013. Dkt. #26. On November 24, 2013, Doig was also served in New York.

### III.   ARGUMENT

This case against Doig should be dismissed under Rule 12(b)(2) for lack of personal jurisdiction. Alternatively, this case should be dismissed for *forum non conveniens* because, if litigation must continue, having this dispute adjudicated in Ontario will best serve the convenience of the parties and the ends of justice.[11]

### A.   DOIG IS NOT SUBJECT TO PERSONAL JURISDICTION IN ILLINOIS

The legal standard for a Rule 12(b)(2) motion is stated in the Dontzin Defendants' Brief (pp. 9–10). Under that standard, Plaintiffs have failed their burden to establish that Doig is subject to personal jurisdiction in Illinois.[12]

---

[9] Doig's personal address in Trinidad and VeneKlasen's in New York have been redacted from the disclosures filed with this Court.

[10] Though her specific connection to this case remains unknown, Polini might be another witness in Canada, based on a reference to a "Natalino (Cheryl) Polini" in an on-line obituary for Mr. Romolo Polini in a funeral home in Thunder Bay, Canada. *See http://www.everestofthunderbay.com/book-of-memories/89160/POLINI-Mr-Romolo/obituary.php* (visited on Dec. 22, 2013).

[11] For the avoidance of doubt, Doig maintains that the record evidence already established leaves no meaningful question of fact in support of Plaintiffs' claims in this case. Plaintiffs have simply made conclusory objections and assertions about the nature of the evidence they have been provided. They have yet to come forward with a shred of admissible evidence in rebuttal.

[12] As with the Dontzin Defendants and VeneKlasen, Plaintiffs only allege that Doig is subject to specific personal jurisdiction in Illinois. *See* ¶ 13. They do not assert that Doig is subject to general personal jurisdiction in Illinois. Nor could they. Doig does not have the "continuous and systematic general business contacts" with Illinois to

### 1. *Doig Had Zero Contacts with Anyone in Illinois Concerning the Disputed Painting.*

Doig is a citizen of Trinidad and Tobago and has resided in Trinidad since 2002. ¶ 4; Doig Decl. ¶ 2. The Complaint and jurisdictional record unambiguously show that Doig personally had absolutely no contact with Plaintiffs or anyone else in Illinois. The Complaint alleges only that Bartlow, on Fletcher's behalf, sent an e-mail inquiry to the Trinidad and Tobago Film Festival "in which [Bartlow] referred to Fletcher and Thunder Bay by name, as well as to a painting by Doig that Fletcher owned." ¶ 33; *see also* Doig Decl. ¶ 9 ("I first learned about the Disputed Work in September 2011 when the Trinidad and Tobago Film Festival … forwarded an email to me that Peter Bartlow had sent to them."). Doig did not respond to that inquiry and "never reached out to Mr. Bartlow or anyone else in Illinois in connection with the Disputed Work." Doig Decl. ¶ 8.

Thus, Plaintiffs cannot point to any contact that Doig directly made with anyone in this forum.

### 2. *VeneKlasen's and the Dontzin Defendants' Contacts Are Insufficient to Establish Personal Jurisdiction over Doig.*

Because Doig had no personal contacts with Illinois, Plaintiffs rely on the contacts of Doig's agent and attorneys to argue that those contacts should be imputed to Doig for purposes of establishing personal jurisdiction over Doig. These contacts amount to the following:

- VeneKlasen responded to communications initiated by Bartlow in the fall of 2011. After consulting with Doig, VeneKlasen answered that the Disputed Painting was not by Doig, that Doig did not know Fletcher, and that Doig had never been to Thunder Bay prison. Accordingly, VeneKlasen admonished Bartlow not to attribute the Disputed Painting to Doig. *See* VeneKlasen's Br. at 4–5.

- Following Bartlow's threat to "pursue all legal avenues to determine if" Doig authored the Disputed Painting, the Dontzin Defendants issued a cease-and-desist

support general personal jurisdiction over him. *See* Doig Decl. ¶¶ 22–24 (attesting to his lack of pervasive contacts with Illinois). *See KM Enterps., Inc. v. Global Traffic Techs., Inc.*, 725 F.3d 718, 733 (7th Cir. 2013).

letter to Bartlow in October 2011. *See* VeneKlasen Decl. ¶¶ 20–21; Dontzin Decl. ¶ 12; Dontzin-Bartlow Letter.

- Justine Birbil, a director of the Michael Werner Gallery, answered a phone call in May 2012 from Leslie Hindman, an auctioneer whom Bartlow contacted to sell the Disputed Work as one by Doig. Birbil Decl. ¶ 3 ("she was doing her research on it before considering it."). Birbil responded that the Gallery was familiar with the Disputed Work, that it was not Doig's work, and accordingly, cautioned Hindman not to pursue it as a Doig piece. *Id.*, ¶ 4.

- The Dontzin Defendants sent a follow-up letter dated May 16, 2012, to Hindman politely warning her not to auction or sell the Disputed Painting as a work by Doig. Dontzin Appx. 20.

For the reasons stated in the Dontzin Defendants' and VeneKlasen's Briefs, these contacts (even if imputed to Doig) are manifestly insufficient to establish even a *prima facie* case for personal jurisdiction over Doig in Illinois. *See* Dontzin Defendants Br. at 11–14; VeneKlasen's Br. at 6–9.

### 3. *Subjecting Doig to Jurisdiction in Illinois Would Also Offend Principles of Fair Play and Substantial Justice.*

Doig's lack of qualifying "minimum contacts" with Illinois and thus the absence of any "purposeful availment" can (and should) end the jurisdictional inquiry. But here, it would also be inherently unfair and unjust to exercise jurisdiction over Doig in this forum. Doig resides in Trinidad and has no connection to Illinois. The Due Process Clause forbids exercising jurisdiction when doing so would offend "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113 (1982); *Wiles v. Morita Iron Works Co., Ltd.*, 125 Ill. 2d 144, 152 (1988); *Soper v. Jurid Werke GMBH*, 1990 WL 119414, *3 (N.D. Ill. Aug. 10, 1990). Five factors are considered. *See Burger King*, 471 U.S. at 477; *Wiles*, 125 Ill. 2d at 152. As shown below, all five militate against exercising personal jurisdiction over Doig.

### a) The Burden on Doig Would Be Substantial.

In any due process analysis—but especially when an international defendant is involved—the Supreme Court has noted that the primary concern should always be the burden on the defendant who is being forced to litigate in a foreign forum. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292 (1980); *Wiles*, 125 Ill. 2d at 152; *Soper*, 1990 WL 119414, *3. Thus, "great care should be exercised when extending our notions of personal jurisdiction into the international field." *Asahi,* 480 U.S. at 115. Moreover, the "weaker the defendant's contacts with the forum state are, the less likely it is that exercising jurisdiction over that defendant is appropriate." *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 759–60 (7th Cir. 2010).

There is no dispute that this primary factor weighs heavily in Doig's favor. He is a citizen of Trinidad & Tobago and has lived in Trinidad since 2002. Doig Decl. ¶ 2. Doig does not live in or regularly conduct business in Illinois. *Id.*, ¶ 22. He has no bank account here, and he does not own, use, or possess, any real estate in this state. *Id.*, ¶ 23. Nor does he regularly travel to this State. *See id.*, ¶ 24. Haling Doig into this State to respond to a lawsuit brought by a Canadian owner of a painting who claims to have met Doig almost 40 years ago would plainly impose unreasonable burdens on Doig.

### b) Illinois Has Little Interest in Resolving this Dispute.

Illinois has little interest in this case. The connection of this case to Illinois is purely the happenstance result of Fletcher's decision to engage Bartlow, an art dealer in Illinois. *See* ¶¶ 9, 31. As the owner of the Disputed Work, Fletcher is the real party-in-interest. Fletcher is a Canadian citizen and a resident of Sault Ste. Marie, Ontario, Canada. Doig Appx. 24. Plaintiffs contend that Doig painted the Disputed Work while he was a resident of Canada in the 1970s. According to Plaintiffs, the principal legal and factual issues in this case are "[w]hether the painting at issue may be legally attributed to Peter Doig in a future private or auction sale, in

exhibition or otherwise" and "[w]hether the painting at issue was painted by the hand of Peter Doig." Doig Appx. 17. Simply put, these issues concern what happened (or did not happen) in Ontario decades ago. They have little, if anything, to do with Illinois.

> c) *Litigating This Dispute in Illinois Does Not Advance Plaintiffs' Interest in Obtaining Convenient and Effective Relief or Promote the Interstate Judicial System's Interest in Obtaining the Most Efficient Resolution of Controversies.*

Permitting this lawsuit to proceed against Doig in Illinois does nothing to advance any interest that Plaintiffs may have in "obtaining convenient and effective relief," the third factor. It also does not promote the interstate judicial system's interest in obtaining the most efficient resolution of controversies, the fourth factor. To the contrary, as shown in Part III.B.3, below, all of the key evidence that Plaintiffs profess to need is located in Ontario and elsewhere in Canada. Litigating this dispute in Illinois would frustrate, not advance, Plaintiffs' ability to obtain "convenient and effective" relief and would hamper rather than facilitate the most efficient resolution of this controversy.

> d) *Policy Concerns Also Counsel Against Exercising Jurisdiction.*

The final factor is the "advancement of substantive social policies." *Asahi*, 480 U.S. at 113. When concerned with an international defendant, courts are "to consider the procedural and substantive policies of other *nations* whose interests are affected by the assertion of jurisdiction by the [forum] court." *Asahi*, 480 U.S. at 115 (emphasis in original). As shown in Part III.B.3, below, Plaintiffs contend that evidence must be obtained directly from the foreign institutions in Canada. If necessary, that will invariably implicate the procedural policies of Ontario with respect to providing information from non-party witnesses. *See* Capern Aff. ¶¶ 56 (explaining that the Ontario court will apply its own independent test to decide whether to give effect to the

letters of request); *see also* Capern Aff. ¶ 56(d) n.31 (noting the potential impact of Ontario's Freedom of Information and Protection of Privacy Act). Thus, this factor also supports dismissal.

* * *

As a result, not only are there insufficient contacts to support the exercise of personal jurisdiction over Doig in Illinois, but doing so also would not comport with "fair play and substantial justice."

### B. THIS CASE SHOULD BE DISMISSED FOR *FORUM NON CONVENIENS*.

Alternatively, this Court should dismiss this case against Doig for *forum non conveniens* in favor of the courts of Ontario, Canada.[13] Under the doctrine of *forum non conveniens*, the Court can dismiss a suit to "best serve the convenience of the parties and the ends of justice." *Stroitelstvo Bulgaria Ltd. v. Bulgarian-Am. Enter. Fund*, 589 F.3d 417, 421 (7th Cir. 2009).

The defendant has the burden of demonstrating *forum non conveniens*, and its burden is met where (1) the new locale provides an "adequate alternative forum," and (2) the balance of private and public interest factors favors dismissal. *Pyrenee, Ltd. v. Wocom Commodities, Ltd.*, 984 F. Supp. 1148, 1161 (N.D. Ill. 1997). Ultimately, "the central purpose of any forum non conveniens inquiry is to ensure that the trial is convenient." *Chelios v. Nat'l Hockey League Players' Ass'n*, No. 06 C 5333, 2007 WL 178326, *3 (N.D. Ill. Jan. 18, 2007).

Here, not only would it be more convenient for this dispute to be adjudicated in the Ontario courts, but also if a lawsuit must proceed, the Ontario courts are the only fair and logical place for this dispute to be handled. Plaintiffs concede that "most of this discovery [to determine

---

[13] This Court may forego the personal jurisdiction analysis and dismiss the action against Doig for *forum non conveniens*. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422 (2007).

whether they should proceed with their case] is third-party discovery to foreign institutions (e.g., in Canada)." Doig Appx. 21.

### 1. No Deference Should Be Accorded to Plaintiffs' Choice of Forum, because Fletcher, the Real Party-in-Interest, Is Canadian.

Although courts conducting a *forum non conveniens* analysis typically afford at least some deference to the plaintiff's choice of forum, "[w]hen application of the doctrine would send the plaintiffs to their home court, the presumption in favor of giving plaintiffs their choice of court is little more than a tie breaker." *Abad v. Bayer Corp.*, 563 F.3d 663, 667 (7th Cir. 2009); *Chang v. Baxter Healthcare Corp.*, 599 F.3d 728, 735 (7th Cir. 2010). This case is not even close to a tie.

Here, the principal plaintiff is Fletcher. He is the owner of the Disputed Work. ¶ 1. Indeed, Fletcher is real party-in-interest. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981) (confirming that the presumption accorded to a plaintiff's choice of forum applies with less force when the real parties in interest are foreign). The Bartlow Gallery's interest arises merely by virtue of the private, consignment arrangement under which the Bartlow Gallery receives a "percentage-based commission on any sale or other proceeds obtained by the Work." ¶ 9. "[M]erely because one may benefit by the result in litigation does not make him 'a real party in interest.'" *Armour Pharm. Co. v. Home Ins. Co.*, 60 F.R.D. 592, 594 (N.D. Ill. 1973).[14] As the consignee of the Disputed Work for Fletcher, the Bartlow Gallery is just Fletcher's agent, and its inclusion as a party to this lawsuit merits little (if any) consideration. *E.g., Estate of Davis v. Erickson Beamon, Ltd.*, No. 1:12-CV-01687-JMS, 2013 WL 6328726, *5 (S.D. Ind.

---

[14] *See also Owner-Operators Indep. Drivers Ass'n, Inc. v. Mayflower Transit, Inc.*, 1:98-CV-0457-SEB-VSS, 2006 WL 1794751 (S.D. Ind. June 27, 2006) (quoting, with approval, Restatement (Second) of Agency § 372(2): "An agent does not have such an interest in a contract as to entitle him to maintain an action at law upon it in his own name merely because he is entitled to a portion of the proceeds as compensation for making it or because he is liable for its breach.").

Dec. 4, 2013) ("The Court finds that the Estate's and CMG's choice of forum, Indiana, should be given less deference when the only connection is that the agent (CMG) for the real party in interest (the Estate) is headquartered there.").

Even granting some consideration to the Bartlow Gallery's inclusion, the "presence of American plaintiffs, by itself, does not bar *forum non conveniens* dismissal." *In re Air Crash Near Athens, Greece on August 14, 2005*, 479 F. Supp. 2d 792, 798 (N.D. Ill. 2007). The Seventh Circuit looks to substance over form in determining whether the American judicial forum is convenient. *See*, *e.g.*, *U.S.O. Corp. v. Mizuho Holding Co.*, 547 F.3d 749, 752 (7th Cir. 2008). In this case, Fletcher is the real party-in-interest, so the presumption in Plaintiffs' choice of court "is little more than a tie breaker." *Abad*, 563 F.3d at 667.

### 2.     *The Ontario Courts Offer an Available, Adequate Forum.*

Dismissal for *forum non conveniens* requires "an available and adequate alternative forum that has jurisdiction over the case." *Harris v. France Telecom, S.A.*, No. 11 CV 357, 2011 WL 3705078 (N.D. Ill. Aug. 22, 2011). The availability "requirement will be satisfied when the defendant is 'amenable to process' in the other jurisdiction." *Piper Aircraft Company*, 454 U.S. at 254 n.22 (quoting *Gulf Oil v. Gilbert*, 330 U.S. 501, 506–507 (1947)). The availability test is readily satisfied: Doig consents to the jurisdiction of the Ontario courts if this action is dismissed for *forum non conveniens*. Doig Decl. ¶ 28.[15]

The alternative forum is adequate "if it provides a fair hearing that offers a potential remedy for the subject matter of the dispute." *Harris*, 2011 WL 3705078, *4 (citing *Stroitelstvo*

---

[15] For the avoidance of doubt, Doig does not believe that there is any basis for proceeding with this action—given the evidence that has been provided to Plaintiffs confirming that he did not paint the Disputed Work and that Peter Edward Doige actually did. *See* Doig Decl. ¶¶ 27–28. If this action must proceed, though, it ought to be handled by the Canadian courts. *Id.*, ¶ 28.

*Bulg. Ltd.*, 589 F.3d at 421.[16]  This factor, too, is also easily met.  In support of this motion, Doig

submits the Affidavit of Gordon D. Capern ("Capern Aff."), a well-respected, experienced

Ontario attorney.  In considerable detail, Capern explains that Plaintiffs could bring this action

against Doig in the Ontario courts.  Capern Aff. ¶¶ 27–33.  He also confirms that the parties

would not be deprived of all remedies or treated unfairly:

- The Ontario courts recognize the tort of "intentional interference with economic relations," which is comparable to count I of the Complaint for tortious interference with prospective economic advantage.  *Id.*, ¶¶ 34–36.

- Consistent with count II of the Complaint, Plaintiffs could seek declaratory relief in Ontario.  *Id.*, ¶¶ 37–39.

- "If necessary and appropriate, an Ontario court will apply foreign law to resolve a dispute before it."  *Id.*, ¶ 40.

- The Ontario courts provide litigants with the opportunity to have their disputes decided in a fair and impartial manner.  *Id.*, ¶¶ 20–26.

Capern's analysis comports with Judge Conlon's decision in *Chelios*, 2007 WL 178326, *3–4, as

well as numerous other federal cases over the last decade holding that the Ontario courts pass the

adequacy test.[17]

### 3. *The Private and Public Interest Factors Strongly Weigh in Favor of Dismissal.*

If an adequate alternative forum exists, the court should consider whether a *forum non*

*conveniens* dismissal would serve the private interests of the parties and the public interests of

the alternative forums.  *Stroitelstvo Bulgaria Ltd.*, 589 F.3d at 424.  This test is met here, as well.

---

[16] To the extent that Plaintiffs may quarrel with the scope of the remedies that may be available in Ontario, it is well established that the "remedy need not be as comprehensive or as favorable as the American claims, they need only offer some avenue of redress." *Harris*, 2011 WL 3705078, *4 (citing *Stroitelstvo*, 589 F.3d at 421).

[17] *E.g.*, *Sonoco Products Co. v. ACE INA Ins.*, 877 F. Supp. 2d 398, 411-12 (D.S.C. 2012); *Moss v. Nui Phao Mining Joint Venture Co., Ltd.*, No. 10-1634 SC, 2010 WL 3222377 (N.D. Cal. Aug. 13, 2010); *Kitaru Innovations Inc. v. Chandaria*, 698 F. Supp. 2d 386, 397 (S.D.N.Y. 2010); *In re Royal Grp. Technologies Sec. Litig.*, No. 04 Civ. 9809, 2005 WL 3105341 (S.D.N.Y. Nov. 21, 2005); *Campbell v. Bridgeview Marina, Ltd.*, 347 F. Supp. 2d 458, 464-65 (E.D. Mich. 2004); *VictoriaTea.com, Inc. v. Cott Beverages, Canada*, 239 F. Supp. 2d 377, 387 (S.D.N.Y. 2003).

> a) *The Private Interest Factors Strongly Weigh in Favor of Dismissal.*
>
> (1)    Access to sources of proof.

The first private interest factor is the "relative ease of access to sources of proof." *Stroitelstvo*, 589 F.3d at 424.[18]  This factor cuts heavily in favor of dismissal.  Plaintiffs question the veracity of the evidence that they have been provided showing (a) that Doig did not paint the disputed work and was not incarcerated in Thunder Bay and (b) that deceased Peter Edward Doige did.  *See* Doig Appx. 19 (asserting that "the Dontzin Defendants' descriptions and characterizations of documents informally produced by them are in several cases inaccurate and misleading, as are certain statements in the Declaration of Marilyn I. Bovard of Alberta.").

Plaintiffs profess to "need to obtain authentic records through discovery, directly from the appropriate institutions rather than through a person in Alberta, Canada who is not fully and directly subject to this Court's authority." *Id.*  Further, the discovery "required to determine whether Plaintiffs should proceed with their case" is "third-party discovery to foreign institutions (e.g., in Canada)." *Id.*  Plaintiffs acknowledge that obtaining this discovery "will require additional steps that could increase the length of time to obtain discovery responses." *Id.*

As Capern explains, "parties engaged in litigation in the U.S. have no rights to compel witnesses to attend pre-trial discovery, trial or produce relevant documents absent an Ontario court order."  Capern Aff. ¶ 50.  And while mechanisms exist for compelling witnesses or institutions to provide oral or documentary evidence through letters rogatory, "[t]here is no assurance of success because the Ontario court will independently evaluate the propriety of enforcing the U.S. letters of request using its own test." *Id.*, ¶ 57.

---

[18] The relative convenience of the witnesses is often recognized as the most important factor.

Logically, gathering this proof is considerably less desirable when channeled across the border through the U.S. courts than if the case were pending in Ontario in the first place. As Capern explains:

> [T]he process of enforcing letters of request in Ontario increases the overall cost of the litigation and the length of time necessary to obtain relevant information. Moreover, practical problems may arise to increase further the delay and cost associated with this process. For example, if the Ontario court is not satisfied with the detail and clarity provided in the letters of request, the moving party will be denied relief and have no choice but return to the U.S. court and seek revised letters of request. I have encountered this problem in the past, and it leads to additional delay and cost.

*Id.*, ¶ 58. In contrast, obtaining discovery directly for a case pending in the Ontario courts presents inherent advantages because parties can apply in Ontario to have their civil actions assigned to a case management judge to oversee all of the pre-trial matters, who "would have an appreciation of the facts and issues in the underlying action, and could evaluate the request for non-party discovery and assess objections in their proper context." *Id.*, ¶ 64.

In this case, where some of the discovery that Plaintiffs proclaim to need exists in the hands of public institutions like Thunder Bay Correctional Center and Lakehead University, not having the case handled by the Ontario courts would handicap the truth-seeking process because a "case management judge would also be familiar with the scope of the Ontario discovery process and, as a result, would likely appreciate better why the requested evidence is relevant and not obtainable from any other source." *Id.*, ¶ 65.

There is, thus, no dispute that access to sources of proof would be considerably greater if the case were handled in the Ontario courts.

(2)    Compelling attendance of unwilling witnesses.

The second private interest factor considers the availability of compulsory process for attendance of unwilling witnesses. *Stroitelstvo*, 589 F.3d at 424. This factor, too, clearly

supports dismissal. Based on the parties' witness lists and Plaintiffs' position with respect to the need for direct evidence from institutions in Canada, it appears that there could be several witnesses who could not be compelled to trial here in the United States.

Plaintiffs have already refused to accept evidence obtained from a witness, like Bovard, "who is not fully and directly subject to" the presiding court's authority. Doig Appx. 19. In addition to Bovard, other witnesses may include representatives from Lakehead University, the Thunder Bay Correctional Center, the Thunder Bay Probation and Parole Office, the Seafarer's Union in Ontario, the Thunder Bay police, the Royal Canadian Mounted Police, and the schools that Doig attended during the period in question (Jarvis/S.E.E.D.)

Against this background, it makes much more sense to have this case adjudicated in Ontario, because under the Ontario rules, witnesses resident in Ontario like them can be summoned to trial there and witnesses in another Canadian province (like Marilyn Bovard)[19] can also be brought to trial. *See* Capern Aff. ¶¶ 67–70. Even if non-party testimony could be compelled by letters rogatory, those procedures are expensive, difficult, time-consuming and uncertain. Moreover, such evidence is no real substitute for in-court, live testimony by the witnesses. *See* FED. R. CIV. P. 43(a); *In re Adair*, 965 F.2d 777, 780 (9th Cir. 1992) ("The primary purposes of Rule 43(a) are to ensure that the accuracy of witness statements may be tested by cross-examination and to allow the trier of fact to observe the appearance and demeanor of the witnesses.").

This factor also weighs heavily in favor of dismissal. *See, e.g., In re Royal Grp. Technologies Sec. Litig.*, No. 04 Civ. 9809, 2005 WL 3105341, *2 (S.D.N.Y. Nov. 21, 2005) (ruling that, where non-party witnesses were outside the court's subpoena power, the ability for

---

[19] Both parties have listed Bovard on their witness list. Doig Appx. 25, 28.

the fact-finder to observe live testimony supported dismissal in favor of the Ontario courts); *Gund v. Philbrook's Boatyard*, 374 F. Supp. 2d 909, 913 (W.D. Wash. 2005) (finding this factor favored Canadian forum where parties may not be able to compel the appearance of their non-party witnesses).[20]

(3)     The cost of obtaining attendance of willing witnesses.

The third private interest factor—the cost of attendance of willing witnesses—also without doubt favors the Ontario forum. Chicago, Illinois, is home to only one witness, Bartlow, of the Bartlow Gallery. All of the other listed witnesses will be required to travel—whether from Trinidad or New York, or elsewhere. Plaintiffs' most important fact witness, Fletcher, resides in Ontario.

If representative witnesses from any of the third-party institutions in Ontario are willing without compulsory process to attend trial here, the cost and inconvenience of bringing them to Illinois will be much greater than if they testified in their own home province. (But, of course, there is no assurance that any of these representative witnesses will voluntarily agree to attend.)

(4)     Viewing the premises.

The fourth private interest factor regarding viewing the premises, is not appropriate to this action.

(5)     Other practical problems.

The fifth, residual private interest factor considers "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Stroitelstvo*, 589 F.3d at 424. There can be little doubt that proceeding with this lawsuit against Doig in this Court would pose many greater

---

[20] *See also* Capern Aff. ¶ 71 ("[T]he ability to compel witnesses like Bovard to testify at trial would afford the parties the opportunity to have her give viva voca evidence (i.e. live testimony) at the trial. The court can observe the witness' physical reaction to the questions and make credibility determinations, based on, for example, factors such as demeanour and tone of voice."); *Michell v. Gen. Motors Corp.*, 439 F. Supp. 24, 27 (N.D. Ohio 1977).

problems than if it were pending in the Ontario courts.  Given that the records at issue date back nearly 40 years, the process of obtaining information through letters rogatory imposes greater burdens and slows the discovery process significantly.  As Capern explains, for example, if the Ontario court is not persuaded with the details provided in the letters rogatory, it can deny the moving party relief—sending it back to the U.S. courts to start over.  Capern Aff. ¶ 65.  Alternatively, the court could modify the letters, and without a full appreciation of why the discovery is being sought in its proper context, this could impede the ability to obtain the information requested.  *Id.*

As is the case here, it is unclear exactly what the nature of the records at issue will be.  So, even after Canadian respondents provided discovery in responses to letters rogatory enforced by the Canadian courts the first time around, the ability to obtain follow-up information would be severely hampered.  And, the costs would be significantly greater because lawyers on both sides of the border would need to be extensively involved in each round of cross-border discovery.

Simply put, "obtaining information from Ontario institutions … would be easier and, in [Capern's] opinion, probably more efficient if the case were proceeding in Ontario in the first instance."  Capern Aff. ¶ 66.  This stands to obvious reason.

### b) The Public Interest Factors Support Dismissal.

#### (1) Court congestion.

The first public interest factor—the administrative difficulties stemming from court congestion—slightly favors dismissal in favor of the Ontario forum.  Capern observes that "in most cases, it would take at least nine (9) months, but more commonly two years or more from

the time a claim is commenced before a matter proceeds to trial." Capern Aff. ¶ 25. By contrast, in this federal district, the **_median_** time interval for civil actions to trial is 33.7 months.[21]

(2)      Having localized disputes decided at home.

The second public interest factor, an interest in trying "localized controversies" at home, favors Ontario over any other jurisdiction. Ontario is Fletcher's home and where the conduct Plaintiffs allege occurred (*i.e.*, the arrest, incarceration, and supposed painting by Doig of the Disputed Work). As noted in Part III.A.3.b), above, the connection of this case to Illinois is purely the happenstance result of Fletcher's decision to engage Bartlow, an art dealer in Illinois. Fletcher is the real party-in-interest. The facts show, at most, a minor relationship to Illinois and no "substantial interest" for Illinois courts to decide this case. A peripheral connection to the forum does not make it a local controversy. *E.g.*, *Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.*, 796 F.2d 821, 831 (5th Cir. 1986) ("Although there is a local interest in having local controversies decided at home, this case can hardly be characterized as a local controversy.") (internal quotes omitted).

(3)      The remaining public interest factors.

The remaining public interest factors either do not significantly impact the analysis, or support dismissal. With respect to the third public interest factor, having the trial of a diversity case in a forum that is at home with the law that must govern the action, and the forth factor of avoiding unnecessary conflicts of laws problems, an extended choice-of-law analysis is not needed at this juncture. As noted in the Dontzin Defendants' Brief, the moral right of an artist with respect to attribution, the key legal principle at stake in this case, is well recognized (in one form or another) in both Canada and the United States. *See* Dontzin Br. at 7–9. Just as this

---

[21] U.S. District Courts—Median Time Intervals from Filing to Disposition of Civil Cases Terminated, Table C-5, http://www.uscourts.gov/Viewer.aspx?doc=/uscourts/Statistics/FederalJudicialCaseloadStatistics/2013/tables/C05Mar13.pdf (visited on December 20, 2013).

Court could apply foreign law if needed, the Ontario courts are equally competent to do the same. *See* Capern Aff. ¶¶ 40–43.

As for the final factor considering the unfairness of burdening citizens in an unrelated forum with jury duty, Plaintiffs have waived any right to a jury trial in this Court (and the time for Doig to make a jury demand under Rule 38 has not yet come). In any event, as demonstrated above, Illinois has comparatively little to do with this dispute. So, if this case were tried to a jury in Ontario (even if it could be), it would raise no fairness concerns.

* * *

Ontario presents an adequate, available alternative forum for adjudicating Plaintiffs' dispute with Doig. The private interest factors all weigh heavily in favor of dismissal. And to the extent they apply, so do the public interest factors. If this case against Doig is not dismissed for lack of personal jurisdiction, it should be dismissed for *forum non conveniens*.

## IV.   CONCLUSION

For the reasons stated in this brief, in the Dontzin Defendants' Brief, and in VeneKlasen's Brief, Defendant Peter M. Doig respectfully urges this Honorable Court to dismiss this action in its entirety against him under Rule 12(b)(2) for lack of personal jurisdiction. Alternatively, Doig seeks dismissal for *forum non conveniens* in favor of the courts of Ontario, Canada.

Dated: December 23, 2013

_____/s/_____

Suyash Agrawal
Jeannie Y. Evans
AGRAWAL EVANS LLP
308 W. Erie Street, Suite 502
Chicago, IL 60654
Telephone: (312) 448-8800
Facsimile:  (312) 445-9949

*Counsel for Peter Doig,*
*Gordon VeneKlasen, Matthew S. Dontzin and*
*The Dontzin Law Firm LLP*