# Exhibit A

*Movants' Demonstrative*

| ZIESKE'S STATEMENT TO THE COURT | THE TRUTH |
|---|---|
| **Pre-suit Discovery of Doige** "Despite extensive research, no evidence has been found of any other person with a first name of Pete or Peter and a family name of Doig or Doige in Canada in the late 1970s." <br><br> App'x 8, Compl. 32(f) | "Over the course of the next several months, I investigated Mr. Fletcher's story. My efforts included interviewing Mr. Fletcher … , reviewing documents from Mr. Fletcher and Mr. Bartlow, *conducting internet research regarding persons with the names 'Peter Doig' and 'Peter Doige' who could conceivably have been the author of the painting*, and interviewing Mr. Bartlow …." <br><br> December 30, 2016 Affidavit of William F. Zieske ¶5 <br><br> The only point the Defense is making here that *contains a kernel of truth* is that Bartlow Gallery, LTD. maintained that they found no other Pete Doige in Canada. *Mr. Bartlow had relied on Mr. Zieske for this statement*. <br><br> Bartlow Gallery LTD.'s Response to Motion for Sanctions, 18-19 |

1

*Movants' Demonstrative*

| | ZIESKE'S STATEMENT TO THE COURT | THE TRUTH |
|---|---|---|
| **Bartlow's Experience** | "They also -- oh, they – what's the phrase now? *Mr. Bartlow has no experience at all with Doig or Doig's works apart from this lawsuit.* Where's that come from? That's not in the record, not at all. He only said he's never seen one in person until this lawsuit was filed. *That's made up*, no citation, no support." <br><br><br> App'x 546, April 6, 2016 Hearing Transcript 50:6-11 | Q: Did you respond to the message that you got from Doug Fletcher? <br><br> A: Yes, I did. I said— <br><br> Q: How did you respond? <br><br> A: I think I said—I said something like, well, like, okay, what do you have or send me a picture, and I was interested. I thought it was a different artist. <br><br> Q: Who did you think it was? <br><br> A: I thought it was Maxwell Doig. <br><br> * * * <br><br> Q: ***Now, had you heard at that point of the artist Peter Doig?*** <br><br> MR. BARTLOW: ***No, I had not***. <br><br><br> App'x 2273-74, Trial Tr. 583:14-22; 584:11-12 |

*Movants' Demonstrative*

| ZIESKE'S STATEMENT TO THE COURT | THE TRUTH |
|---|---|
| **Fletcher's Memory** — "These records … indicat[e] an absence from school in Toronto from sometime in June 1976 … through December 1977 …. This defines precisely *the 18-month gap in defendant Doig's life records* during which he appeared at Lakehead University, was arrested, incarcerated for approximately five months at the Thunder Bay Correctional Centre and there painted the Disputed Work in 1976, was on parole for several months following that, and sought employment at the Seafarers' Union."<br><br>App'x 242-243, Ps' Opp. to Doig's MSJ at 6-7 | Fletcher Trial Testimony  (App'x 2116-17)<br><br>Q.  Mr. Fletcher, it says: "*Summer of 1975.*" Trevor, in that section, put in yellow for us "*introduced to Pete Doige at that time or in September 1975* at Lakehead University by mutual friends."  Mr. Fletcher, these -- this is a document you produced through your attorney. *These are notes that you created* and which are typed for you, right, sir?<br><br>A. They are, *yes*.<br><br>Bartlow Trial Testimony  (App'x 2455)<br><br>Q. In this document, sir, on the second page we're looking at it, it says "Robert Fletcher" – that's your co-plaintiff, right?<br><br>A. Yes.<br><br>Q. – "*first met Pete Doige on the campus of Lakehead University in Thunder Bay, Ontario sometime before April 1976.*"  Do you see that, sir?<br><br>A. I see it.<br><br>Q. And you wrote that because that is what he told you, right?<br><br>A. I wrote that because that's what I believed at the time.<br><br>Q. And that information would have come, as it says here, from Robert Fletcher, right?<br><br>A. It would have to have come from him, yeah, if, in fact, it was accurate. In fact, if that's what he told me. |

*Movants' Demonstrative*

| | ZIESKE'S STATEMENT TO THE COURT | THE TRUTH |
|---|---|---|
| **Woolwine** | "Judge, *there are other people related to this man who say that it's impossible for him to have been in Thunder Bay at that time*. So, I would say – I'm very comfortable with going ahead with the facts that we know now, with discovery to make sure that this really is painted by the Peter Doig, the famous painter."<br><br>App'x 415-16, September 3, 2013 Hearing Transcript | "I subsequently tried to call Ms. Woolwine to obtain the paintings and an affidavit from her. *My calls were met with anger and a refusal to discuss or cooperate in the case in any way*. Consequently, I retained counsel in Idaho where Ms. Woolwine lived and served a subpoena upon her."<br><br>December 30, 2016 Affidavit of William F. Zieske, ¶14 |
| **Adams** | "Plaintiffs' counsel has since spoken with Mr. Adams. He has *recanted* the certainty with which his affidavit was written for him, stating that he cannot be sure that the Lakehead identification photo is the same man he last saw nearly forty years ago."<br><br>App'x 227, Plaintiffs' Reply iso Motion for Rule 37 Sanctions at 3 | A: Mr. Zieske – I'm sorry if I'm not pronouncing your name properly, Zieske -- he told me -- when I told him I wasn't going to sign it, he said that he would have a U.S. Marshal charge me with perjury because I had recanted my statement to him over the phone, to which I disagreed to the point where I believe I hung up on him eventually.<br><br>Q: Now, Mr. Zieske has told the Court that you did, in fact, recant your sworn declaration. At any time, did you recant your declaration?<br><br>A: *I did not*.<br><br>App'x 3104-05, Trial Tr. 1413:23-1414:7 |

*Movants' Demonstrative*

| | ZIESKE'S STATEMENT TO THE COURT | THE TRUTH |
|---|---|---|
| **Bovard** | "So, we do not have an official death certificate for him, and that's only the tip of the iceberg, Judge."<br><br>App'x 414, September 3, 2013 Hearing, 4:13-14<br><br><br>"Ms. Bovard has no shred of credibility left."<br><br>App'x 228, Jan. 7, 2016  Reply in Support of Motion for Sanctions | Q:  You have no basis to dispute that this is Ms. Bovard's brother's death certificate, correct?<br><br>MR. FLETCHER: *Correct.*<br><br>App'x 955, Fletcher Deposition Tr. 118:15-17<br><br><br>Q: Do you dispute that the death certificate she's attached to her declaration is an authentic document?<br><br>A: *I have no way of knowing. It wasn't important to me.*<br><br>App'x 739, Bartlow Deposition Tr. 75:2-6 |

**SUMMARY JUDGMENT ORAL ARGUMENT TRANSCRIPT (App'x 550)**

```
 8            Now, yes, there are things, your Honor, like the
 9   signature that disturb me, absolutely.  The fact that Doige
10   may have been in Thunder Bay at the same time, although the
11   dates don't match up, they were in 1976.  This is 1978, 19 --
12   so, they don't work with Mr. Fletcher's recollection, but the
13   fact that Mr. Doige and Mr. Doig might have been in Thunder
14   Bay at the same time, it's odd, seems odd to me; but it
15   doesn't so much, and I'll tell you why.  Because counsel that
16   we hired in Toronto for this case, there's a Peter Doige who
17   lives right next door to him in Toronto.  It's a pretty common
18   name.
```