UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT FLETCHER and BARTLOW GALLERY LTD., <br><br> Plaintiffs, <br><br> vs. <br><br> PETER DOIG, GORDON VeneKLASEN, MATTHEW S. DONTZIN, and THE DONTZIN LAW FIRM LLP, <br><br> Defendants. | 13 C 3270 <br><br> Judge Gary Feinerman |

### MEMORANDUM OPINION AND ORDER

Robert Fletcher and Bartlow Gallery Ltd. brought this diversity suit against Peter Doig and some of his associates, alleging interference with prospective economic advantage and requesting damages and declaratory relief. Doc. 1. Having obtained judgment, Doc. 261, Defendants filed a bill of costs seeking $66,624.04 under Civil Rule 54(d), Doc. 262. The court awards costs to Defendants in the amount of $59,401.27.

**Discussion**

Rule 54(d)(1) provides in relevant part: "Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). A court awarding costs must ask first "whether the cost imposed on the losing party is recoverable" under 28 U.S.C. § 1920 and, "if so, whether the amount assessed for that item was reasonable." *Majeske v. City of Chicago,* 218 F.3d 816, 824 (7th Cir. 2000). Recoverable costs include (1) "[f]ees of the clerk and marshal"; (2) fees for "transcripts necessarily obtained for use in the case"; (3) "[f]ees and disbursements for printing and witnesses"; (4) "[f]ees for exemplification and the costs of making copies of any materials

where the copies are necessarily obtained for use in the case"; (5) docket fees; and (6) "[c]ompensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services." 28 U.S.C. § 1920. "Although a district court has discretion when awarding costs, the discretion is narrowly confined because of the strong presumption created by Rule 54(d)(1) that the prevailing party will recover costs." *Contreras v. City of Chicago,* 119 F.3d 1286, 1295 (7th Cir. 1997) (internal quotation marks and citation omitted).

I. **Hearing and Trial Transcripts**

Defendants request $24,623.30 in costs for court hearing and trial transcripts. Doc. 262 at 1; Doc. 262-1 at 5. In *National Organization for Women, Inc. v. Scheidler*, 750 F.3d 696 (7th Cir. 2014), the Seventh Circuit held that to show that the cost of transcripts or photocopies were necessary for purposes of § 1920(2), "[n]o statute or rule requires" a prevailing party to do anything more than submit under 28 U.S.C. § 1924 an affidavit "made by himself or by his duly authorized attorney or agent having knowledge of the facts, that [the costs sought are] correct and [have] been necessarily incurred in the case." *Id*. at 698. Thus, if the prevailing party provides an affidavit averring that its transcript costs were necessary, a court must take the party at its word—within reason, of course. *See id*. at 698-99 (applying this principle to transcripts); *In re Text Messaging Antitrust Litig.*, 2014 WL 4343286, at *2 (N.D. Ill. Sept. 2, 2014) (rejecting the plaintiffs' objection that the defendants had failed to provide detail regarding "what was copied, the costs per page, and the number of copies").

Here, Defendants' counsel submitted a declaration averring that "the itemized costs were necessarily incurred in this case." Doc. 262-2 at ¶ 4. Under *Scheidler*, therefore, the court awards costs for each hearing and trial transcript ordered by Defendants.

That said, the court will not award the total amount sought for each particular transcript. For the pretrial hearings, Defendants purchased "hourly" (same-day production) or "daily" (next-day production) transcripts for seven of the nine transcripts ordered. The other two were "expedited" (production within fourteen days) transcripts. Defendants do not adequately explain why same-day or next-day service was reasonably necessary for pretrial hearing transcripts. The court will therefore award costs for such transcripts at only the "expedited" rate of $4.85 per page. *See Thayer v. Chiczewski*, 2010 WL 3087447, at *6 (N.D. Ill. Aug. 4, 2010) ("Defendants have properly shown that it was reasonable and necessary to order the hearing transcript but have failed to show why it was necessary to order the transcript at the "Hourly Transcript" rate. … [A]n "Expedited Transcript" would have been reasonable."). Accordingly, costs for pretrial hearing transcripts are reduced from the requested $1,888.85 to $1,401.65.

As to the trial transcripts, Defendants adequately explain why hourly and daily transcripts were necessary to impeach witnesses, prepare an expert witness to respond to an opposing witness's testimony, and respond to Plaintiffs' rebuttal case. Doc. 262-1 at 2-4; Doc. 280 at 4-9. Such expenditures were reasonable because the trial lasted several days and because the credibility of both expert and fact witnesses was a key issue. *See Majeske*, 218 F.3d at 825 n.3 (affirming an order awarding daily transcripts where the trial was lengthy and complex); *EEOC v. Sears, Roebuck & Co.*, 114 F.R.D. 615, 622 (N.D. Ill. 1987) ("[A]n award may also include charges for hourly or same day transcripts, where the trial is long, the issues are complex, a transcript is needed to minimize disagreement over testimony or to cross-examine experts, or witness credibility is in issue."). Defendants are therefore awarded the requested $12,933.75 for the hourly and daily trial transcripts.

Defendants also adequately explain why "realtime" transcripts (that is, electronically delivered live transcripts) were necessary for impeachment purposes during trial. Doc. 262-1 at 3-4; Doc. 280 at 7; *see In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 855-56 (N.D. Ill. 2015) (awarding costs for realtime transcripts used during a deposition). Nevertheless, Defendants offer no explanation for why they required two or three realtime feeds rather than just one. Accordingly, realtime costs are awarded at only the single-feed rate of $3.05 per page, rather than the two-feed rate of $4.20 per page or the three-feed rate of $6.30 per page. The costs for trial realtime transcripts therefore are reduced from the requested $9,800.70 to $5,764.50.

## II.     Photocopying and Exemplification

Section 1920(4) provides that a prevailing party may recover "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." 28 U.S.C. § 1920(4). Defendants claim $713.95 in photocopying fees. Doc. 262 at 1; Doc. 262-1 at 14. Plaintiffs do not challenge those costs, and the court finds them reasonable and necessary after its review of Defendants' supporting documentation and affidavit attesting to their necessity. *See Scheidler*, 750 F.3d at 698.

Defendants also claim $4,530.89 in exemplification costs for demonstrative exhibits and PowerPoint slides prepared for trial. Doc. 262 at 1; Doc. 262-1 at 16. Section 1920(4)'s authorization of costs for exemplification includes recovery for costs incurred in the preparation of visual aids for use at trial. *See Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 427 (7th Cir. 2000) (holding that exemplification costs include "the reasonable expense of preparing maps, charts, graphs, photographs, motion pictures, photostats, and kindred materials") (internal quotation marks omitted); *Haroco, Inc. v. Am. Nat. Bank & Tr. Co. of Chi.*, 38 F.3d 1429, 1441 (7th Cir. 1994) ("We find that the costs for the copying and collating of exhibits and the graphics charges

fall squarely within this language and the award was proper in this regard."). As a general matter, therefore, Defendants' costs for demonstratives and slides used at trial are statutorily authorized and reasonable.

That said, a portion of the exemplification expenditures ($2,075.89) relate to the production of a map of Toronto that Defendants did not use at trial or otherwise. Defendants correctly point out that the failure to introduce documents at trial does not necessarily render their cost nontaxable. *See Illinois v. Sangamo Constr. Co.*, 657 F.2d 855, 867 (7th Cir. 1981) ("The underlying documents need not be introduced at trial in order for the cost of copying them to be recoverable."). But despite Defendants' insistence that production of the Toronto map was reasonable, Doc. 262-1 at 15; Doc. 280 at 14 n.12, the court finds otherwise, having presided over the bench trial. Defendants may not recover for exemplification costs related to the map, and exemplification costs accordingly are reduced from $4,530.89 to $2,455.00.

### III. Deposition Transcripts and Deposition Video Recordings

Defendants request $19,547.40 in costs for expenditures related to depositions. Doc. 262 at 1; Doc. 262-1 at 8-12. This includes deposition transcripts of several deponents and video recordings of the depositions of Peter Bartlow (the principal of Bartlow Gallery), Fletcher, and Victor Wiener (Plaintiffs' expert witness). *Id*. at 7, 9-11.

"[T]he costs of both a stenographic transcript and videotape of a deposition may be taxed against a party." *Rogers v. City of Chicago*, 2002 WL 423723, at *3 (N.D. Ill. Mar. 15, 2002); *see Merix Pharm. Corp. v. Clinical Supplies Mgmt., Inc.*, 106 F. Supp. 3d 927, 943 (N.D. Ill. 2015) ("The cost of video recording and stenographic transcription may be taxed, provided that both are reasonable and necessary."). In a case like this one, where the credibility of Fletcher, Bartlow, and Wiener was a key issue, it was reasonable to obtain videos of those witnesses'

5

depositions for use at trial. *See Vardon Golf Co. v. Karsten Mfg. Corp.*, 2003 WL 1720066, at *9 (N.D. Ill. Mar. 31, 2003) (awarding costs for both deposition transcripts and deposition videos where the videos were played at trial); *Williams v. Bd. of Comm'rs*, 938 F. Supp. 852, 861 (S.D. Ga. 1996) (recognizing the benefits of a video over a transcript when assessing the credibility of a deponent); *see also* Fed. R. Civ. P. 32(a)(2)-(3) (addressing the use of depositions at trial).

Plaintiffs contend that the costs of the deposition videos were unreasonable because none of the video-recorded deponents was outside of the court's subpoena power. Doc. 272 at 12. But the rule that Plaintiffs hint at—that deposition videos are taxable only when the court cannot subpoena a witness—is not the law. *See Little v. Mitsubishi Motors N. Am., Inc.*, 514 F.3d 699, 702 (7th Cir. 2008) (awarding costs for a deposition transcript and deposition video of a party deponent); *see also* Fed. R. Civ. P. 32(a)(2)-(3). Accordingly, Defendants' request for $19,547.40 in deposition-related costs is awarded in full.

## IV. Witness Fees

Defendants claim $17,188.50 in costs relating to the travel and subsistence of six trial witnesses. Doc. 262 at 1; Doc. 262-1 at 18. Section 1920(3) authorizes a prevailing party to recover certain witness related costs set forth in 28 U.S.C. § 1821. *See Majeske*, 218 F.3d at 825-26. Section 1821 in turn permits "a witness in attendance at any court of the United States … or before any person authorized to take his deposition pursuant to any rule or order of a court" to be paid a $40.00 daily attendance fee, 28 U.S.C. § 1821(a)(1), (b), and certain reasonable travel and subsistence expenses, *id.* § 1821(c), (d).

Plaintiffs raise several objections to the witness fees sought by Defendants. Plaintiffs first argue that the witnesses' hotel costs were exorbitant because they were put up at a

needlessly expensive Chicago hotel. Doc. 272 at 5. The argument misses the mark, however, because Defendants do not seek to tax Plaintiffs for the full cost of the witnesses' hotel stays. Rather, Defendants seek costs only for the General Services Administration maximum of $200 that obtained for Chicago at the pertinent time. Doc. 262-1 at 18 & n.6. Objections to the cost of subsistence for meals and incidentals fail for the same reason: Defendants seek costs only up to the amount permitted under the then-applicable GSA rates. *Ibid*. (Those rates were $74 daily for meals and incidentals, except that the allowances for the first and last days were 75% of that amount ($55.50).).

Plaintiffs further suggest that Defendants' witnesses spent an unnecessarily long time in Chicago and that their attendance and subsistence costs should be limited to three days (and two nights). Doc. 272 at 6. Defendants correctly respond that they could not reasonably determine when each witness would take the stand and that Plaintiffs' case-in-chief took longer than the two days that Defendants had expected. *See Haroco*, 38 F.3d at 1442 (explaining that witnesses are compensated "for their availability and readiness to testify rather than actual testimony"); *Movitz v. First Nat. Bank of Chi.*, 982 F. Supp. 571, 576 (N.D. Ill. 1997) ("Fees for witnesses are paid to the witnesses for their availability to testify."). Defendants identify the specific dates that each witness arrived in and departed Chicago, Doc. 262-1 at 18, and Plaintiffs do not contend that any particular witness arrived too early or departed too late. Not to mention, the fact that the trial spanned more than one week required some witnesses to remain in Chicago over the weekend. *Ibid*.

Plaintiffs also object to costs for the witnesses' cab fares, which totaled $1,223.48 (approximately $200 per witness). Doc. 272 at 5-6. Defendants respond that reasonable ground transportation is a recoverable cost. *See Kinser v. CBS Corp.*, 2014 WL 1493485, at *4 (C.D. Ill.

7

Apr. 16, 2014) (awarding costs for a rental car and a car service). The costs here, however, were not entirely reasonable. Review of the receipts submitted by Defendants reveals that most of the cab expenditures were for a car service at a rate of about $100 for each trip to or from the airport. Doc. 262-3 at 43-44, 55-57, 76, 92-93, 102-103. More economical options, such as a traditional taxicab, were readily available in Chicago, and the court accordingly reduces recoverable cab fare costs to $100 per witness. *See* 28 U.S.C. § 1821(c)(1) (limiting common carrier charges to "the most economical rate reasonably available"). Allowable cab fare costs are therefore reduced from $1,223.48 to $600.

Plaintiffs also suggest that Defendants overpaid for their witnesses' airfare because they booked flights just a few days in advance of each witness's travel. Doc. 272 at 5. That does not actually appear to be true for most of the witnesses. Rather, most appear to have purchased their tickets one to two weeks in advance of their departure. Doc. 262-3 at 37, 46, 59, 89, 100, 116. And, in any case, it is not necessarily unreasonable to book airfare on short notice given the uncertainties as to when the witnesses might be called to the stand. *See Petit v. City of Chicago*, 2003 WL 22339277, at *9 (N.D. Ill. Oct. 10, 2003) (holding that "it was reasonable for defendant to book the air flights on short notice" because "trial dates often change and it is difficult to know exactly when and for how long a witness will testify"). Moreover, the witnesses booked economy fares on relatively low-cost commercial carriers such as American Airlines, Delta, and Air Canada. For these reasons, Defendants are awarded witness costs totaling $16,565.02 (the requested $17,188.50 minus $623.48 in cab fare).

V.   **Docketing Fee**

Defendants request a docketing fee of $20 under 28 U.S.C. § 1920(5) and 28 U.S.C. § 1923(a).  Doc. 262 at 1; Doc. 262-1 at 19.  Plaintiffs do not object to this request, and the court finds it reasonable and awards the fee.

## Conclusion

Plaintiffs' objections to Defendants' bill of costs are sustained in part and overruled in part.  Defendants' bill of costs is granted in part and denied in part, resulting in a cost award to Defendants of $59,401.27.

December 31, 2022

_____
United States District Judge